No. 32,450

THE CENTRAL NATIONAL BANK OF JUNCTION CITY, *Appellee*, v. R. D: HENDERSON and MINNIE HENDERSON, *Appellants*.

(51 P. 2d 982)

Opinion filed December 7, 1935.

*R. H. Seeds* and *Matt Guilfoyle*, both of Abilene, for the appellants.

*U. S. Weary*, of Junction City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: The question involved in this action was whether a deed conveyed title to the property described therein, or whether, because of the circumstances under which it was executed and the intention of the parties, it should be construed to be a mortgage to secure a debt. The trial court found the deed conveyed title and rendered judgment for plaintiff. Defendants have appealed.

Briefly the facts not in controversy may be stated as follows: Defendants owned three tracts of land in Geary county, (*a*) 467 acres mortgaged for $15,000 to a federal land bank; (*b*) 240 acres mortgaged for $6,000 to a federal land bank, the title to these tracts being in Mr. Henderson, and (*c*) 120 acres encumbered by a first mortgage of $6,000 and a second mortgage of $300 to a loan company, the title being in the name of Mrs. Henderson. Under the amortization plan of payment the principal of the mortgages to the land bank had been reduced about $1,000. However, at the time of the execution of the deed, soon to be mentioned, there was accrued interest on all these mortgages and unpaid taxes on the lands so that, we are told, all of the mortgages were subject to foreclosure. In addition to this, defendants owed the plaintiff bank $3,800 secured by a second mortgage on tract (*a*), which was due, and the bank held defendants' unsecured notes for $750, $50, $100, $25, and $1,000 secured by a second chattel mortgage on livestock, all of which were due and on all of which there was accumulated interest of $518.03. In this situation the plaintiff bank desired an adjustment of the matter and proposed to the Hendersons if they would convey the land to it, subject to encumbrances other than its own, it would lease the property to them for eighteen months and in the lease give them an option to repurchase the property for the amount of their indebtedness to the bank, less a discount of $1,500. At a conference on this matter the papers were prepared. Defendants' attorney was present. They did not execute the papers at that time, but said they would think it over. After considering the matter about a month the following papers were executed: First, a deed by defendants to the plaintiff bank subject to the encumbrances, except that owed the bank. This was in form a general warranty deed in which there was written in: "This deed is an absolute conveyance of title in effect as well as form and is not intended as a mortgage, trust conveyance or security of any

kind," and stated the consideration to be the full release of the several notes to the bank above mentioned. On the same date the bank and defendants executed an instrument called a "lease and option to purchase," in which plaintiff leased to defendants the real property which had been conveyed to it by them for a term of eighteen months. The rent to be paid was stipulated. It was further agreed that the defendants should have an option to buy the lands, describing them, for the sum of $5,770.61, plus interest thereon at six percent per annum, plus any sums plaintiff should pay as interest, taxes, or insurance on the property, with six percent interest thereon. Plaintiff made a written statement to defendants of the items making up the amount of this option. It consisted of the several notes defendants owed the bank, aggregating, with interest, $6,243.03, plus the taxes of 1931, and an item of interest on one of the mortgages, less a discount by the bank of $1,500. The bank marked as paid and delivered to defendants their notes held by it, above mentioned, and released its second mortgage on tract (a). Defendants remained in possession of the property under the lease and paid the bank the rent stipulated in the lease, or a substantial part of it. On one occasion, at the solicitation of a representative of the federal land bank, some rent corn was sold and the proceeds paid to the land bank to apply upon interest due it. Defendants knew the provisions of the deed and lease, noticed the special paragraph written in the deed, and knew the items making up the amount they were to pay if they exercised the option to purchase contained in the lease. They were prompted to execute the instruments for at least three reasons: (1) They were anxious to avoid any foreclosure action, one or more of which was imminent, (2) they were glad to get a discount of $1,500 on their notes to the bank, in the event they exercised their option to repurchase, and (3) they were confident they would be able to exercise the option within the term of the lease. They never did exercise the option to repurchase.

The controverted issue in the case was whether there was an understanding between the parties which differed from the terms of the instruments executed by them. On this point defendants alleged in substance that all their indebtedness was due, plaintiff was threatening foreclosure, defendants wanted an extension of time on their indebtedness to plaintiff, and that plaintiff agreed with them to extend their loan to it if defendants would execute to plaintiff a

new note for $4,725 and execute the deed to secure it; that plaintiff represented it could not handle the indebtedness in any other way, and that such a deed and contract was the usual and customary method used by banks in the extension and renewal of mortgages; that defendants relied upon this agreement and upon these representations and executed the deed and the lease, with option to purchase, and also executed a new note to the bank for $4,725; that they would not have done so without the agreement and representations above made and their reliance thereon; and further alleged they were compelled, against their will, by the superior position of plaintiff and its threats of foreclosure, to execute the instrument; and they further alleged the deed was in effect a mortgage to secure the new note. These allegations were denied by plaintiff in its reply. On this controverted issue the evidence was in conflict. The court found defendants did not execute a new note to plaintiff for $4,725, or any other sum, and further found there was no indebtedness existing from defendants to plaintiff. There is an abundance of evidence in the record to sustain these findings, and they are binding on this court.

On the trial defendants presented the further theory that the real property was worth much more than all the indebtedness against it. Evidence on that question was received and the court made a finding that the real property was worth $40,000. It is argued here that since the property was worth substantially more than all the indebtedness against it a court of equity should construe the deed as a mortgage notwithstanding its terms. But the indebtedness on the land, plus the amount defendants were required to pay if they exercised their option to repurchase, plus accumulated interest on these items and accumulated taxes for the term of the lease, would amount to almost as much as the court found the value of the land to be. Certainly there is no disparity sufficient to justify a court of equity in construing the amount that would have to be paid by defendants to exercise their option as a debt and the deed as a mortgage to secure it.

Turning to the legal questions argued. With respect to these nothing new is presented. Normally, written instruments, intelligently executed by parties, are construed according to their terms. However, since the consideration for a deed may always be shown, if the evidence develops that there was a debt and that the deed was given to secure it, the deed will be construed to be a mortgage.

(*Dusenbery v. Bidwell,* 86 Kan. 666, 671, 121 Pac. 1098.) While this showing may be by parol evidence, such evidence must be of a character to be clear and convincing. (*Hoyt v. National Bank,* 115 Kan. 167, 222 Pac. 127.) It is fundamental that an instrument in the form of a deed cannot be construed to be a mortgage to secure a debt unless the debt is found to exist. (*Holuba v. Floersch,* ante, p. 601, 50 P. 2d 1004.) So the question really gets back to the evidence in support of the contention that there was a debt, and whether the parties so understood and agreed, and whether by the execution of the instrument in the form of a deed they intended it should be used only as security for the debt. The special clause written in this deed perhaps had no effect other than its bearing on the intention of the parties. Since the court found there was no debt existing from defendants to plaintiff, and there is evidence to sustain this finding, it correctly concluded the deed was a conveyance of title and not a mortgage to secure a debt.

The judgment of the court below is affirmed.